UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOEL BROWN,

Plaintiff,

-against-

THE CITY OF NEW YORK, P.O. ANTHONY
KEMPINSKI, P.O. KIM LI, LT. WILLIAM DOYLE,
C.O. DAIL, C.O. COVINTON, and CAPT. FIRSOV,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*Kempinski, Li, and Firsov*
*100 Church Street, Room 3-228*
*New York, N.Y.  10007*

*Of Counsel:  Zachary Kalmbach*
*Tel:  (212) 356-2322*
*Matter No.:  2018-068928*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

STANDARD OF REVIEW ........................................................................................................ 1

STATEMENT OF FACTS .......................................................................................................... 3

ARGUMENT

    POINT I

        PLAINTIFF'S CONVICTION BARS HIS § 1983
        CLAIMS RELATING TO HIS ARREST ..................................................6

        A.    This Action Is Barred In Its Entirety By
               *Heck v. Humphrey* ........................................................... 6

        B.    Collateral Estoppel Also Bars Plaintiff's §
               1983 Claims. .................................................................. 8

    POINT II

        THERE WAS REASONABLE SUSPICION AND
        PROBABLE CAUSE TO STOP AND ARREST
        PLAINTIFF ................................................................................... 9

    POINT III

        PLAINTIFF'S CONDITIONS OF
        CONFINEMENT CLAIMS FAIL AS A MATTER
        OF LAW ...................................................................................... 11

        A.    Plaintiff has Failed to State a Constitutional
               Claim for Denial of Religious Meals. .......................... 11

        B.    Plaintiff has Failed to State a Constitutional
               Claim for Unlawful Strip Search. ................................ 13

        C.    Plaintiff Allegation that he was Forced to
               Submit to a Drug Test Does Not Give Rise
               to a Constitutional Claim. ............................................ 15

D.      Plaintiff Has Failed to State a Claim for Deliberate Indifference. ................................................. 16

POINT IV

PLAINTIFF'S PROPERTY DAMAGE CLAIM FAILS AS A MATTER OF LAW ............................................ 16

POINT V

THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ............................................ 17

A.      The NYPD Defendants are Entitled to Qualified Immunity ........................................................ 19

B.      The DOC Defendants are Entitled to Qualified Immunity ........................................................ 19

POINT VI

PLAINTIFF'S MUNICIPAL LIABILITY CLAIM FAILS AS A MATTER OF LAW ............................................ 20

POINT VII

PLAINTIFF'S STATE LAW CLAIMS ARE TIME-BARRED ................................................................. 22

A.      Plaintiff's State Law Claims are Time-Barred ................................................................. 22

B.      The Court Should Decline to Exercise Supplemental Jurisdiction Over Any Surviving State Law Claims. ........................................ 23

CONCLUSION ................................................................. 24

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Pages**

Alloul v. City of New York,
    No. 09 Civ. 7726 (JSR)(FM),
    2010 U.S. Dist. LEXIS 137130 (S.D.N.Y. Dec. 21, 2010) ....................................................17

Amore v. Novarro,
    624 F.3d 522 (2d Cir. 2010)...................................................................................................18

Awelewa v. New York City,
    No. 11 Civ. 778 (NRB), 2011 U.S. Dist. LEXIS 78641
    (S.D.N.Y. July 20, 2011) .........................................................................................................3

Barmapov v. Barry,
    09-CV-3390 (RRM) (RML),
    2011 U.S. Dist. LEXIS 768 (E.D.N.Y. Jan. 3, 2011) ...............................................................8

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007).............................................................................................................1, 2

Bell v. Wolfish,
    441 U.S. 520 (1979)...............................................................................................................15

Bernard v. United States,
    25 F.3d 98 (2d Cir. 1994).........................................................................................................8

Bradway v. Gonzales,
    26 F.3d 313 (2d Cir. 1994).....................................................................................................18

Cameron v. Fogarty,
    806 F.2d 380 (2d Cir. 1986)..................................................................................................7, 8

Channer v. Mitchell,
    43 F.3d 786 (2d Cir. 1994).......................................................................................................7

Chavis v. Chappius,
    618 F.3d 162 (2d Cir. 2010)...................................................................................................12

City of Los Angeles v. Heller,
    475 U.S. 796 (1986)...............................................................................................................21

City of Okla. City v. Tuttle,
    471 U.S. 808 (1985)...............................................................................................................20

Cleveland v. Caplaw Enter.,
    448 F.3d 518 (2d Cir. 2006).....................................................................................................1

| **Cases** | **Pages** |
| --- | --- |

Connick v. Thompson,
563 U.S. 51 (2011).........................................................................................20-21

D.C. v. Wesby,
138 S. Ct. 577..................................................................................................18

Devenpeck v. Alford,
543 U.S. 146 (2004)........................................................................................10

Dove v. City of New York,
No. 99 Civ. 3020 (DC), 2000 U.S. Dist. LEXIS 4053
(S.D.N.Y. March 30, 2000)..............................................................................17

Excell v. Woods,
No. 07-CV-0305 (GTS) (GHL),
2009 U.S. Dist. LEXIS 90191 (N.D.N.Y. Sept. 29, 2009) ................................15

Fitzgerald v. Lyons,
39 A.D.2d 473 (4th Dep't 1972).......................................................................22

Florence v. Bd. Of Chosen Freeholders of Cty. Of Burlington,
566 U.S. 318 (2012)......................................................................................13-14

Ford v. McGinnis,
352 F.3d 582 (2d Cir. 2003).............................................................................12

Gonzalez v. City of Schenectady,
728 F.3d 149 (2d Cir. 2013).............................................................................18

Green v. City of New York,
465 F.3d 65 (2d Cir. 2006)...............................................................................21

Green v. Senkowski,
100 Fed. App'x 45 (2d Cir. 2004).....................................................................16

Heck v. Humphrey,
512 U.S. 477 (1994).......................................................................................6, 7

Hickerson v. City of New York,
146 F.3d 99 (2d Cir. 1998)................................................................................8

Hughes v. Rowe,
449 U.S. 5 (1980).............................................................................................2

Hunter v. Bryant,
502 U.S. 224 (1991)........................................................................................18

**Cases**      **Pages**

Israel v. City of New York,
    No. 11 Civ. 7726 (JMF), 2012 U.S. Dist. LEXIS 144712
    (S.D.N.Y. Oct. 5, 2012) ................................................................................14

Jaegly v. Couch,
    439 F.3d 149 (2d Cir. 2006).................................................................................10

Johnson v. Paul,
    No. 17 Civ. 3654 (KMK), 2018 U.S. Dist. LEXIS 84974
    (S.D.N.Y. May 21, 2018)................................................................................ 11-12

Johnson v. Pugh,
    No. 11-CV-385 (RRM) (MDG),
    2013 U.S. Dist. LEXIS 85699 (E.D.N.Y June 18, 2013) ...................................2, 12

Jones v. Town of E. Haven,
    691 F.3d 72 (2d Cir. 2012).................................................................................21

Kaufman v. Eli Lilly & Co.,
    65 N.Y.2d 449 (1985) ........................................................................................8

Keaton v. Ponte,
    No. 16 Civ. 3063 (KPF), 2017 US Dist LEXIS 124303
    (S.D.N.Y. Aug. 4, 2017) ....................................................................................14

Keith v. City of New York,
    No. 11 Civ. 3577 (KPF), 2014 U.S. Dist. LEXIS 166469
    (S.D.N.Y. Dec. 1, 2014).....................................................................................23

Kisela v. Hughes,
    138 S. Ct. 1148 (2018) .......................................................................................18

Kramer v. Time Warner Inc.,
    937 F.2d 767 (2d Cir. 1991)...............................................................................3

LaFaro v. New York Cardiothoracic Group, PLLC,
    570 F.3d 471 (2d Cir. 2009)...............................................................................2

Lawtone-Bowles v. City of N.Y., Dep't of Sanitation,
    22 F. Supp. 3d 341 (S.D.N.Y. May 30, 2014) .......................................................12

Martinez v. City of New York,
    No. 06 Civ. 5671 (WHP), 2008 U.S. Dist. LEXIS 49203
    (S.D.N.Y. June 27, 2008)....................................................................................21

| **Cases** | **Pages** |
|---|---|

McLaurin v. Kornas,
439 Fed. App'x 38 (2d Cir. 2011)..........................................................................7, 8

Mercado v. City of New York,
08 Civ. 2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430
(S.D.N.Y. Dec. 5, 2011)...............................................................................................20

Mitchell v. Dep't of Corr.,
05 Civ. 5792 (JSR) (HBP),
2008 U.S. Dist. LEXIS 24830 (S.D.N.Y. Feb. 20, 2008)........................................15

Monell v. Dep't of Social Services,
436 U.S. 658 (1978)......................................................................................................20

Monroe v. Myskowsky,
No. 12 Civ. 5513 (KPF), 2014 U.S. Dist. LEXIS 14933
(S.D.N.Y. Feb. 6, 2014) ........................................................................................... 2-3

Pearson v. Callahan,
555 U.S. 223 (2009)......................................................................................................18

Peek v. City of New York,
No. 13 Civ. 4488, 2014 U.S. Dist. LEXIS 117516
(S.D.N.Y. Aug. 18, 2014) ...........................................................................................14

Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.
Morgan Stanley Inv. Mgmt. Inc.,
712 F.3d 705 (2d Cir. 2013).........................................................................................24

Perez v. Ponte,
236 F. Supp. 3d 590 (E.D.N.Y. Feb. 4, 2017) .................................................13, 14

Rodriguez v. Coughlin,
795 F. Supp. 609 (W.D.N.Y. Aug. 12, 1992) ........................................................15

Rodriguez v. Weprin,
116 F.3d 62 (2d Cir. 1997)............................................................................................2

Roundtree v. City of New York,
No. 15 Civ. 8198 (WHP), 2018 U.S. Dist. LEXIS 51919
(S.D.N.Y. Mar. 27, 2018) ...........................................................................................15

Salahuddin v. Goord,
467 F.3d 263 (2d Cir. 2006).........................................................................................12

**Cases**                                                         **Pages**

Samuels v. Air Transp. Local 504,
    992 F. 2d 12 (2d Cir. 1993)........................................................................2

Sanadze v. City of New York,
    736 Fed. App'x 284 (2d Cir. 2018)..........................................................7

Saucier v. Katz,
    533 U.S. 194 (2001)................................................................................18

Smart v. City of New York,
    No. 08 Civ. 2203 (HB), 2009 U.S. Dist. LEXIS 30241
    (S.D.N.Y. Apr. 1, 2009)..........................................................................10

Smith v. City of New York,
    No. 14 Civ. 5934 (JCF), 2015 U.S. Dist. LEXIS 81337
    (S.D.N.Y. June 17, 2015).........................................................................14

Storms v. Coughlin,
    600 F. Supp. 1214 (S.D.N.Y. Dec. 19, 1984) ........................................15

Taravella v. Town of Wolcott,
    599 F.3d 129 (2d Cir. 2010)....................................................................18

Terry v. Ohio,
    392 U.S. 1 (1968).....................................................................................9

Thygsen v. North Bailey Volunteer Fire Co. Inc.,
    106 A.D.3d 1458 (4th Dep't 2013).........................................................23

Triano v. Town of Harrison,
    895 F. Supp 2d 526 (S.D.N.Y. 2012).......................................................2

United States v. Arvizu,
    534 U.S. 266 (2002)................................................................................10

United States v. Brockington,
    378 Fed. App'x 90 (2d Cir. 2010)..........................................................10

United States v. Scopo,
    19 F.3d 777 (2d Cir. 1994)......................................................................10

United States v. Sokolow,
    490 U.S. 1 (1989)....................................................................................10

United States v. Villegas,
    928 F.2d 512 (2d Cir. 1991)................................................................9-10

**Cases**                                                                    **Pages**

Vining v. Dep't of Corr.,
    No. 12 Civ. 3267 (JPO), 2013 U.S. Dist. LEXIS 136195
    (S.D.N.Y. Apr. 5, 2013)........................................................................................1

Vippolis v. Vill. of Haverstraw,
    768 F.2d 40 (2d Cir. 1985)..............................................................................20

Wagman v. Hooper,
    138 A.D.3d 826 (2d Dep't 2016) ....................................................................23

Washington v. Chaboty,
    No. 09 Civ. 9199 (PGG), 2015 U.S. Dist. LEXIS 40245
    (S.D.N.Y. Mar. 30, 2015) ...............................................................................12

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996)............................................................................10

White v. Pauly,
    137 S. Ct. 548 (2017)......................................................................................18

Wiley v. Kirkpatrick,
    801 F.3d 51 (2d Cir. 2015)................................................................................2

Williams v. New York,
    64 N.Y.2d 800 (1985) .....................................................................................23

Zellner v. Summerlin,
    494 F.3d 344 (2d Cir. 2007)............................................................................10

**Statutes**

42 U.S.C. § 1983....................................................................3, 6, 7, 8, 9, 10, 17, 20

Fed. R. Civ. P. 8(a)(2)..............................................................................................2

Fed. R. Civ. P. 12(b)(6).......................................................................................1, 24

Fed. R. Evid. 201 .....................................................................................................3

GML § 50-(e)...........................................................................................................22

GML § 50-e(1)(a) ....................................................................................................22

GML § 50-e(1)(b) ....................................................................................................22

GML § 50-i(i) ..........................................................................................................22

| **Statutes** | **Pages** |
|---|---|
| GML § 50-k(2) | 23 |
| GML § 50-k(3) | 23 |
| GML § 50-k(6) | 22, 23 |
| New York Penal Law § 265.03(1)(b) | 5 |
| New York Penal Law § 265.03(3) | 5 |
| VTL § 375(41)(1) | 4 |
| VTL § 402 | 4 |
| VTL § 511 | 3, 7 |
| VTL § 511(1)(a) | 5 |

## PRELIMINARY STATEMENT

Plaintiff's claims that he was unlawfully stopped and arrested by Officers Kempinski, Li, and Doyle,[1] members of the New York City Police Department ("NYPD"), fail because he admits he committed multiple traffic violations, and was convicted for criminal possession of a weapon after he was found to be in possession of a loaded firearm. Further, plaintiff's claims against Officers Firsov, Covinton, and Dail[2] that, while he was in the custody of the New York City Department of Correction ("DOC"), he was denied access to religious meals, unlawfully strip searched, and forced to submit to a drug test fail to rise to the level of Constitutional violations. Finally, plaintiff's claim for deliberate indifference to medical needs fails because he has not alleged a sufficiently serious medical condition, nor that any member of DOC denied him access to care.

## STANDARD OF REVIEW

"On a motion to dismiss a complaint pursuant to Rule 12(b)(6), the Court accepts the complaint's factual allegations as true and draws inferences only in plaintiff's favor." Vining v. Dep't of Corr., No. 12 Civ. 3267 (JPO), 2013 U.S. Dist. LEXIS 136195, at *1 (S.D.N.Y. Apr. 5, 2013) (citing Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir. 2006). "Nevertheless, to survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Vining, 2013 U.S. Dist. LEXIS at *2 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court is "not bound to accept as true legal conclusions couched

---

[1] Plaintiff has named Lt. William Doyle as a defendant in this action, but not yet served him with process. Thus, Lt. Doyle has not yet been joined in this action and is not represented by this Office. Nonetheless, the purported claims against Lt. Doyle fail for the reasons set forth below, and the City seeks dismissal of all claims against him.

[2] This Office has been unable to identify any officer assigned to MDC during the relevant time period named "Covinton" or "Dail." Thus, the City has been unable to disclose the names and addresses of these individual officers, they have not been joined in this action, and they are not represented by this Office. Nonetheless, the purported claims against these officers fail for the reasons set forth below, and the City seeks dismissal of all claims against them.

as factual allegations." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475-76 (2d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677. Rule 8(a)(2) of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Triano v. Town of Harrison, 895 F. Supp 2d 526, 529 (S.D.N.Y. 2012). A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In applying these standards to a *pro se* complaint, the Court will of course be aware that the plaintiff's pleadings should be held, "to less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980). However, a court can only interpret a *pro se* pleading to "raise the strongest arguments that [it] suggest[s]." Wiley v. Kirkpatrick, 801 F.3d 51, 62 (2d Cir. 2015). A *pro se* pleading "that offers 'labels and conclusions' or only provides 'naked assertion[s]' devoid of 'further factual enhancement' is insufficient." Barnes, 2013 U.S. Dist. LEXIS 102197, at *9. "When a *pro se* plaintiff has altogether failed to satisfy a pleading requirement [] the court should not hesitate to dismiss his claim." Johnson v. Pugh, No. 11-CV-385 (RRM) (MDG), 2013 U.S. Dist. LEXIS 85699 (E.D.N.Y June 18, 2013) (citing Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997)).

In deciding a motion to dismiss, a court should consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F. 2d 12, 15 (2d Cir. 1993); see also Monroe v. Myskowsky, No. 12 Civ. 5513 (KPF), 2014 U.S. Dist.

LEXIS 14933, at *2 n.3 (S.D.N.Y. Feb. 6, 2014) (The Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201, including public records such as arrest reports, indictments, and criminal disposition data.) (citing Kramer v. Time Warner Inc., 937 F.2d 767, 773-75 (2d Cir. 1991)); Awelewa v. New York City, No. 11 Civ. 778 (NRB), 2011 U.S. Dist. LEXIS 78641, at *2 (S.D.N.Y. July 20, 2011).

Here, the Court may take judicial notice of the Criminal Court records and the New York City Police Department ("NYPD") arrest and complaint reports. Based on the facts alleged in the Amended Complaint and records which may be judicially noticed, all of plaintiff's claims must be dismissed.

## STATEMENT OF FACTS

Plaintiff brings this 42 U.S.C. § 1983 action alleging claims of false arrest and various conditions of confinement claims against the City of New York and members of the NYPD and New York City Department of Correction ("DOC").[3] (Amended Complaint, annexed to the Declaration of Zachary Kalmbach ("Kalmbach Decl.") as Exhibit A). Specifically, plaintiff alleges that, on September 6, 2015, Officers Kempinski, Li, and Doyle falsely arrested plaintiff, charging him with third-degree aggravated unlicensed operation of a motor vehicle in violation of New York Vehicle and Traffic Law ("VTL") § 511 and "other crimes unk[n]own to the plaintiff." (Id. at 8). Plaintiff alleges that he "did not give [permission] to search at the time of [his] arrest" and that his "arrest did not result from a [routine] traffic stop." (Id. at 10.) Plaintiff asserts that, following his arrest, Officer Kempinski "took possession of [his] keys, and without permi[ssio]n from the Plaintiff . . . operated [his vehicle] in a joy ride that resulted in a[n] accident, with damages to Plaintiff's property." (Id.) Plaintiff further alleges that, on July

---

[3] The Court dismissed plaintiff's "access-to-courts" claims on September 14, 2018 (ECF No. 8).

19, 2018, a jury found him not guilty, but that he "is still incarcerated related to the September 6th, 2015 arrest." (Id.).

NYPD documents indicate that plaintiff was stopped on September 6, 2015 because he was violating multiple traffic laws, including failing to properly display a license plate, and displaying unlawful lights. (Arrest Report, annexed to the Kalmbach Decl. as Exhibit B.) Upon further investigation, plaintiff's license was found to be suspended, and plaintiff was therefore arrested for aggravated unlicensed operation of a motor vehicle. (Arrest Report, Kalmbach Decl., Exhibit B.) During plaintiff's first trial, plaintiff admitted through his criminal defense attorney that he was employing illegal strobe lights on his motorcycle,[4] stating, "I just want you to know that in this particular case, my client was stopped by police because he had strobe lights. It went all different colors and were very bright[.]" (Trial Transcript at pp. 20-21 and 168, annexed to the Kalmbach Decl. as Exhibit C.) Plaintiff also admitted through his attorney that plaintiff was not displaying a valid license plate,[5] and that a check of plaintiff's driver's license revealed that his driving privileges were suspended. (Id. at pp. 169-70.) Plaintiff's New York Department of Motor Vehicles ("DMV") record, obtained from the Criminal Court file for his prosecution, also indicates that plaintiff's license was suspended on the date of his arrest. (Driving Record, annexed to the Kalmbach Decl. as Exhibit D). Following plaintiff's arrest, an inventory search of the motorcycle revealed a loaded firearm. (Id.) Thereafter, plaintiff was re-arrested for criminal possession of a weapon. (Arrest Report, Kalmbach Decl., Exhibit B.) During the criminal prosecution, plaintiff challenged his stop and the search of his vehicle in an effort to suppress evidence of the firearm. (Mapp/Dunaway

---

[4] VTL § 375(41)(1) provides that "No light, other than a white light, and no revolving, rotating, flashing or constantly moving while light shall be affixed to, or displayed on any vehicle…"

[5] See VTL § 402.

Transcript, annexed to the Kalmbach Decl. as Exhibit E.)  The Court in that matter ruled that the stop and search were lawful.  (Id. at pp. 62-65.)

On September 11, 2015, a grand jury indicted plaintiff on two counts of criminal possession of a weapon in the second degree, in violation of New York Penal Law §§ 265.03(1)(b) (possession of a loaded firearm with intent to use the same unlawfully against another) and 265.03(3) (possession of any loaded firearm), and aggravated unlicensed operation of a motor vehicle in the third degree, in violation of Vehicle and Traffic Law ("VTL") § 511(1)(a).  (Indictment, annexed to the Kalmbach Decl. as Exhibit F.)  On July 19, 2018, plaintiff's first trial ended in a mistrial as it pertained to the weapons offenses, and he was acquitted of the VTL charge.  (Office of Court Administration Record, annexed to the Kalmbach Decl. as Exhibit G.)  On March 27, 2019, plaintiff was convicted at trial of both weapons offenses.  (Certificate of Disposition, annexed to the Kalmbach Decl. as Exhibit H.)

Plaintiff also asserts a number of other claims arising from his detention at MDC.[6] First, plaintiff alleges that, on November 1, 2017, he "informed the facility staff at Medical Intake" that he "is a lifelong Vegan for Religious Meals" and "is also lactose int[o]lerant."  (Id.) Plaintiff alleges that, despite this, he did not receive a vegan meal until January 11, 2018.  (Id.) Plaintiff further alleges that, after his January 11th meal, Captain Firsov told him that he would not receive another vegan meal until he "once again went to Medical sick call."  (Id.) Additionally, plaintiff alleges that, on January 17, 2018, he was subjected to a strip search in the presence of female officers and in front of cameras.  (Id.)  Moreover, plaintiff alleges that, on February 14, 2018, Correction Officer Covinton forced him to submit to a drug test and threatened plaintiff with physical force if he failed to comply. (Id.)  Finally, plaintiff alleges that,

---

[6] On September 14, 2018, the Court dismissed plaintiff's access-to-courts claim arising from the alleged interference with his legal mail. (ECF No. 8).

on February 26, 2018, he was transported to the Anna M. Kross Center and, during the hours of 5:00 a.m. and 11:00 p.m., was not provided with a meal or his daily medication, causing him to pass out. (Id. at 13.) Plaintiff alleges that Correction Officer Dail told him to report the allegations to 311. (Id. at 13.)

## ARGUMENT

### POINT I

### PLAINTIFF'S CONVICTION BARS HIS § 1983 CLAIMS RELATING TO HIS ARREST

Plaintiff cannot use this § 1983 action to attack the validity of his outstanding criminal conviction. For the reasons set forth below, plaintiff's claims relating to his September 6, 2015 arrests must be dismissed in their entirety with prejudice.

A. This Action Is Barred In Its Entirety By *Heck v. Humphrey.*

A § 1983 claim cannot be brought if a resolution in plaintiff's favor would undermine an outstanding criminal conviction. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (dismissing § 1983 claim alleging unlawful investigation, destruction or exculpatory evidence and unlawful voice identification procedure, where conviction had not been invalidated). "This requirement avoids parallel litigation over the issues of probable cause and guilt." Id. at 484. More significantly, it prevents a plaintiff from "succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." Id. Given the need to avoid conflicting resolutions, lower courts "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed ...." Id. at 487; see also

Channer v. Mitchell, 43 F.3d 786 (2d Cir. 1994) (affirming a Heck-based dismissal of § 1983 claims because plaintiff failed to establish whether conviction had been reversed).

Simply stated, "civil tort actions are not the appropriate vehicles for challenging the validity of outstanding criminal judgments." Heck, 512 U.S. at 486. Consequently, Heck makes clear that a § 1983 claim can only be brought when "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 487. Thus, a claim for damages regarding a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Id. (emphasis in original).

Here, plaintiff's criminal prosecution terminated with his conviction for criminal possession of a weapon. Plaintiff's claims that he was "falsely accused of crimes beyond [VTL § 511]" and that the stop and search which preceded his arrest was unlawful both implicate the validity of his conviction. See Sanadze v. City of New York, 736 Fed. App'x 284, 287 (2d Cir. 2018) (holding that claims for unreasonable search and seizure implicated the validity of a conviction and were thus barred by Heck). Therefore, Heck bars those claims because a resolution in plaintiff's favor here would necessarily imply the invalidity of his criminal conviction.

Additionally, in order for plaintiff to succeed on his false arrest claim, he would need to establish that there was no probable cause for his arrest. However, any finding of a lack of probable cause to arrest plaintiff would "necessarily imply the invalidity" of his conviction, since the conviction necessarily demonstrates the existence of probable cause. See McLaurin v. Kornas, 439 Fed. App'x 38, 39 (2d Cir. 2011) (conviction established probable cause for the arrest as a matter of law); Cameron v. Fogarty, 806 F.2d 380, 388 (2d Cir. 1986) ("Where the

civil rights plaintiff has been convicted of the offense for which he was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest.")   This result is impermissible under Heck.   Accordingly, as it pertains to plaintiff's claims relating to his September 6, 2015 arrests, this action must be dismissed under Heck because success would undermine the validity of plaintiff's outstanding criminal conviction.

B.      Collateral Estoppel Also Bars Plaintiff's § 1983 Claims.

Even if the Court were to find that plaintiff's § 1983 claims relating to his arrest are not barred by Heck, plaintiff's claims still fail as a matter of law because they are barred by collateral estoppel.   Under New York law, in order for collateral estoppel to preclude the relitigation of an issue, two requirements must be satisfied: "[f]irst, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination."   Barmapov v. Barry, 09-CV-3390 (RRM) (RML), 2011 U.S. Dist. LEXIS 768, at *18-19 (E.D.N.Y. Jan. 3, 2011) (citing Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 455 (1985)).   "Plaintiff[], as the part[y] opposing the application of collateral estoppel, bear[s] the burden of proving that [he was] denied this full and fair opportunity." Hickerson v. City of New York, 146 F.3d 99, 109 (2d Cir. 1998).

Here, regarding the first element, plaintiff is challenging the validity of his arrest and the preceding stop and search on the grounds that each lacked probable cause.   However, the issue of probable cause to arrest plaintiff was necessarily decided in the underlying criminal matter when plaintiff was convicted.   See McLaurin v. Kornas, 439 Fed. App'x at 39; Cameron, 802 F.2d at 388-89.   Moreover, a grand jury indicted plaintiff, thereby finding that there was probable cause for plaintiff's arrest.   Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994) (an

indictment creates a presumption that an arrest was procured with probable cause). With regard to the second element, plaintiff's criminal case was pending for over three and a half years, including two trials. Thus, it is clear that plaintiff was afforded a full and fair opportunity to contest the grand jury's determination that his arrest and prosecution was supported by probable cause. It is also clear that plaintiff took advantage of that opportunity; for example, he challenged the lawfulness of the stop and search. Accordingly, the doctrine of collateral estoppel bars plaintiff's § 1983 claims.

Moreover, the Criminal Court has already ruled that the stop and search were lawful. (Mapp/Dunaway Transcript at p. 62-65, Kalmbach Decl., Exhibit E.) It is clear from the Mapp/Dunaway hearing that the issue of whether the stop and search was lawful decided in the prior action. (Id.) It is also clear that plaintiff had a full and fair opportunity to contest the determination, given that there was a hearing on the issue. Accordingly, collateral estoppel bars plaintiff's claims.

For all of the foregoing reasons, all claims relating to the stop and arrests of plaintiff on September 7, 2015 must be dismissed.

### POINT II

### THERE WAS REASONABLE SUSPICION AND PROBABLE CAUSE TO STOP AND ARREST PLAINTIFF

Plaintiff's claims that he was stopped and arrested without probable cause fail because he has admitted that there was justification for both, which is supported by records relating to his arrest and prosecution. Where an officer has "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,'" he or she may conduct a limited investigative stop of a citizen. Terry v. Ohio, 392 U.S. 1, 30 (1968). As a part of that stop, a police officer may briefly detain an individual for questioning. United States v. Villegas, 928

F.2d 512, 516 (2d Cir. 1991). Reasonable suspicion requires less than a "fair probability" of wrongdoing, and "considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Sokolow, 490 U.S. 1, 7 (1989). In determining whether there was reasonable suspicion, a court must look to the totality of the circumstances to see whether the officer had a "particularized and objective basis" to suspect criminal activity. United States v. Arvizu, 534 U.S. 266, 273 (2002).

Moreover, "reasonable suspicion may develop into probable cause based on events unfolding during an investigative stop." United States v. Brockington, 378 Fed. App'x 90, 92 (2d Cir. 2010). The existence of probable cause is a complete defense to a false arrest claim whether that action is brought under state law or under § 1983. Weyant v. Okst, 101 F.3d 845, 852-3 (2d Cir. 1996). Courts have repeatedly held that "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (citing Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004)); see also Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed any crime."). Moreover, "it is well-established that an officer's direct observation of even a minor traffic violation is sufficient probable cause to arrest the violator." Smart v. City of New York, No. 08 Civ. 2203 (HB), 2009 U.S. Dist. LEXIS 30241, at *13-15 (S.D.N.Y. Apr. 1, 2009) (citing United States v. Scopo, 19 F.3d 777, 781-782 (2d Cir. 1994).

Here, it is undisputed that plaintiff was observed violating multiple traffic laws. By his own admission, he was unlawfully employing illegal strobe lights and failed to properly display a valid license plate. (Trial Transcript at pp. 20-21 and 168, Kalmbach Decl., Exhibit C.) By observing plaintiff commit those traffic violations, Officer Kempinski was provided with "knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that" plaintiff had committed at least two violations. (Arrest Report, Kalmbach Decl., Exhibit B.) Therefore, there was probable cause to stop and arrest plaintiff. At the very least, Officer Kempinski had reasonable suspicion to conduct a brief investigatory stop of plaintiff—which led to the discovery that plaintiff's driver's license was suspended. (Id.) That discovery provided additional probable cause to arrest plaintiff. Plaintiff's arrest report confirms that he was, in fact, arrested for driving on a suspended license. (Id.) Accordingly, plaintiff's unlawful stop and false arrest claims must be dismissed.

**POINT III**

**PLAINTIFF'S CONDITIONS OF CONFINEMENT CLAIMS FAIL AS A MATTER OF LAW**

Plaintiff purports to assert claims for denial of religious meals, unlawful strip search, unlawful search arising from a drug test, and deliberate indifference to medical needs. All of these claims fail to state constitutional violations.

A.    Plaintiff has Failed to State a Constitutional Claim for Denial of Religious Meals.

Plaintiff's claim for denial of religious meals fails because he has failed to show that any alleged conduct substantially burdened his sincerely held religious beliefs. "To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs." Johnson v. Paul, No. 17 Civ. 3654 (KMK), 2018 U.S. Dist. LEXIS 84974, at

*13 (S.D.N.Y. May 21, 2018) (citing Washington v. Chaboty, No. 09 Civ. 9199 (PGG), 2015

U.S. Dist. LEXIS 40245, at *29 (S.D.N.Y. Mar. 30, 2015)); see also Salahuddin v. Goord, 467

F.3d 263, 274-75 (2d Cir. 2006) ("The prisoner must show at the threshold that the disputed

conduct substantially burdens his sincerely held religious beliefs.").  Here, plaintiff has failed to

allege *any* sincerely held religious belief.  Because courts "cannot invent factual allegations that

[a *pro se*] plaintiff has not pled," any free exercise claim must be dismissed.  Chavis v. Chappius,

618 F.3d 162, 170 (2d Cir. 2010); see Lawtone-Bowles v. City of N.Y., Dep't of Sanitation, 22

F. Supp. 3d 341, 345 (S.D.N.Y. May 30, 2014).  Additionally, a plaintiff must plead the personal

involvement of the defendant in any alleged constitutional violation.  Iqbal, 556 U.S. at 677.

Any free exercise claim must also be dismissed, as plaintiff has failed to show

that any alleged conduct "substantially burdened his sincerely held religious beliefs."  As an

initial matter, plaintiff fails to plead any religious belief underlying his request for vegan meals.

Even if plaintiff had pled that he sincerely held a religious belief, he has failed to plausibly allege

a substantial burden on that belief.  "The Second Circuit has further specified that 'the relevant

question in determining whether [the plaintiff's] religious beliefs were substantially burdened is

whether participation in the [religious activity], in particular, is considered central or important

to [the plaintiff's religious] practice.'"  Johnson, 2018 U.S. Dist. LEXIS at *13-14 (quoting Ford

v. McGinnis, 352 F.3d 582, 593-94 (2d Cir. 2003)).  In fact, plaintiff "provides no details

whatsoever about the missed meals…such that the Court could reasonably infer that they were in

turn important to" plaintiff's unspecified religion.  Id. at *16.  Here, plaintiff himself alleges that

he asked for "religious" meals, and was told by Capt. Firsov that he needed medical clearance.

(Amended Complaint at p. 12, Kalmbach Decl., Exhibit A.)  Plaintiff fails to allege that he ever

sought such clearance, or that obtaining it constituted a substantial burden on his right to the free exercise of some religion.

Even if plaintiff had sufficiently pled interference with a sincerely held religious belief, he has failed to plead any facts which suggest that Capt. Firsov was personally involved in a such a deprivation. Plaintiff alleges only that he "was told by MDC Capt. Firsov [that plaintiff] will not receive another [v]egan [m]eal until[] Plaintiff once again went to [m]edical sick call," and that he made oral complaints to Capt. Firsov about not receiving religious meals. (Amended Complaint at p. 12, Kalmbach Decl., Exhibit A.) Plaintiff fails to allege that Capt. Firsov prevented him from receiving a religious meal, or even that she had the power to do so. In fact, he attached a grievance form to the Amended Complaint which states that Capt. Firsov told plaintiff "that there was nothing she can do." (Id. at p. 19.)

Because plaintiff has failed to allege any facts to show that Capt. Firsov substantially burdened a sincerely held religious belief, his free exercise claim must be dismissed.

B.    Plaintiff has Failed to State a Constitutional Claim for Unlawful Strip Search.

Plaintiff's allegation that he was strip-searched in front of female officers and unit cameras does not give rise to a constitutional claim because he has failed to allege that the purported search was unreasonable. In determining the reasonableness of a strip search, courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. See Perez v. Ponte, 236 F. Supp. 3d 590, 623-24 (E.D.N.Y. Feb. 4, 2017). The Supreme Court has reaffirmed that strip searches conducted on detainees who would be admitted to the general population of a jail could be constitutional, and that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." Florence v. Bd. Of

Chosen Freeholders of Cty. Of Burlington, 566 U.S. 318, 328 (2012). Further, "a strip search is not *per se* unconstitutional merely because it takes place in 'the presence of other inmates and employees of the facility—of either sex—during the search.'" Perez, 236 F. Supp. 3d at 623-24; see Israel v. City of New York, No. 11 Civ. 7726 (JMF), 2012 U.S. Dist. LEXIS 144712, at *3 (S.D.N.Y. Oct. 5, 2012) ("The presence of other inmates and officers, males and females, does not alter th[e] determination" that a strip search of plaintiffs was constitutional.); see also Smith v. City of New York, No. 14 Civ. 5934 (JCF), 2015 U.S. Dist. LEXIS 81337, at *5-6 (S.D.N.Y. June 17, 2015) ("neither the presence of cameras nor the presence of other inmates and employees of a correctional facility makes an otherwise constitutional strip search unconstitutional); And, see Peek v. City of New York, No. 13 Civ. 4488, 2014 U.S. Dist. LEXIS 117516, at *2 (S.D.N.Y. Aug. 18, 2014) ("the presence of a camera at a strip search does not amount to a constitutional violation").

Here, plaintiff merely alleges that he was strip-searched in front of female officers and unit cameras. He fails to allege any facts to suggest that the search was unreasonable. Plaintiff, in fact, fails to plead any details regarding this alleged strip search, other than his claims that it occurred in front of female officers and cameras. These facts alone do not give rise to a constitutional violation. See Keaton v. Ponte, No. 16 Civ. 3063 (KPF), 2017 US Dist LEXIS 124303, at *27 (S.D.N.Y. Aug. 4, 2017) (dismissing strip search claim where plaintiff plead only that he was searched by female officers in front of cameras, but failed to allege any other facts which supported claim that search was unconstitutional). Accordingly, any claim arising from the alleged strip search must be dismissed.

C.    <u>Plaintiff Allegation that he was Forced to Submit to a Drug Test Does Not Give Rise to a Constitutional Claim.</u>

Plaintiff's claim that Officer Covinton, who has yet to be identified, forced him to submit to a drug test fails to give rise to a constitution claim because plaintiff has failed to alleged that the alleged test was intended to harass plaintiff or otherwise conducted in an unreasonable manner.  As an initial matter, plaintiff fails to allege the circumstances surrounding the alleged drug test, or even how the test was administered.  Nevertheless, to the extent plaintiff is alleging that a drug test violated his Fourth Amendment rights, any such claim must fail in light of the diminished nature of pre-trial detainees' rights to bodily privacy.  <u>See</u> <u>Mitchell v. Dep't of Corr.</u>, 05 Civ. 5792 (JSR) (HBP), 2008 U.S. Dist. LEXIS 24830 (S.D.N.Y. Feb. 20, 2008) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979)) (balancing the bodily privacy rights of prisoners and detainees against the deference afforded to prison officials); <u>see also</u> <u>Storms v. Coughlin</u>, 600 F. Supp. 1214, 1223 (S.D.N.Y. Dec. 19, 1984) (construing <u>Bell</u> as restricting a prisoner's expectation of bodily privacy to such an extent that any such expectation retained by a prisoner did not forbid "forced random urine collection and analysis").

Additionally, courts in this Circuit have found that, while drug tests must be conducted in a reasonable manner, "as long as [drug testing] is not done with an intent to harass, a corrections officer may order an inmate to submit to a drug test."  <u>Roundtree v. City of New York</u>, No. 15 Civ. 8198 (WHP), 2018 U.S. Dist. LEXIS 51919, at *38-39 (S.D.N.Y. Mar. 27, 2018) (citing <u>Excell v. Woods</u>, No. 07-CV-0305 (GTS) (GHL), 2009 U.S. Dist. LEXIS 90191, at *27 (N.D.N.Y. Sept. 29, 2009) and <u>Rodriguez v. Coughlin</u>, 795 F. Supp. 609 (W.D.N.Y. Aug. 12, 1992).  Here, plaintiff has failed to allege any facts to suggest that the drug test was intended to harass plaintiff or was otherwise conducted in an unreasonable manner.  Accordingly,

plaintiff's allegation that he was forced to submit to a drug test does not give rise to a constitutional claim.

        D.        <u>Plaintiff Has Failed to State a Claim for Deliberate Indifference.</u>

Liberally construed, plaintiff's allegations that he was not provided a meal or medications during a 19-hour period can be read to assert a deliberate indifference claim. (Amended Complaint at p. 13, Kalmbach Decl., Exhibit A.)  However, any such claim fails as a matter of law.  To state a constitutional claim for deliberate indifference to medical needs, a plaintiff must first plead that he suffered from an objectively serious medical condition, which is defined as a "condition of urgency, one that may produce death, degeneration, or extreme pain." <u>See</u> <u>Green v. Senkowski</u>, 100 Fed. App'x 45, 46 (2d Cir. 2004).  Here, plaintiff fails to allege any such condition.[7]  In fact, he fails to allege what medications he was denied.  Additionally, plaintiff fails to allege that any member of DOC denied him access to medical care—only that Officer Dail told him to make a report to 311.  (Amended Complaint at p. 13, Kalmbach Decl., Exhibit A.)  Thus, any deliberate indifference claim must fail.

**POINT IV**

**PLAINTIFF'S PROPERTY DAMAGE CLAIM**
<u>**FAILS AS A MATTER OF LAW**</u>

To the extent the Amended Complaint can also be liberally construed to state a deprivation of property claim under the Due Process Clause with regard to alleged damage to plaintiff's motorcycle,  this claim fails, as there is an adequate post-deprivation remedy under state law.

---

[7] In the context of plaintiff's allegations that he was denied religious meals, he states that he is lactose intolerant.  He also attached a document to his Amended Complaint that indicates that he was added to a therapeutic diet list due to lactose intolerance—but the document is dated after the date of his allegations involving lactose intolerance. Moreover, even if the Amended Complaint were read to include a deliberate indifference claim for failure to provide him with vegan meals, any such claim would fail because lactose intolerance clearly is not a medical condition that may produce "death, degeneration, or extreme pain."

A deprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under § 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a "random and unauthorized" act, as opposed to an "established state procedure." Dove v. City of New York, No. 99 Civ. 3020 (DC), 2000 U.S. Dist. LEXIS 4053, at *7 (S.D.N.Y. March 30, 2000). Courts in this Circuit regularly hold that that state tort causes of action, for instance actions in negligence, conversion, or trespass, provide an adequate post-deprivation remedy where property is lost or damaged as a result of the random and unauthorized actions of state actors. Alloul v. City of New York, No. 09 Civ. 7726 (JSR)(FM), 2010 U.S. Dist. LEXIS 137130, at *17 (S.D.N.Y. Dec. 21, 2010) (dismissing Due Process claim where the plaintiff alleged his car was towed and destroyed) (collecting cases).

Plaintiff's allegations suggest a claim that his vehicle was damaged due to the random and unauthorized act of Officer Kempinski. Indeed, plaintiff characterizes the act of seizing and damaging his vehicle as "unlawful." (Amended Complaint at p. 5, Kalmbach Decl., Exhibit A.); Alloul, 2010 U.S. Dist. LEXIS 137130, at *17 (holding that act was random and unauthorized where Plaintiff acknowledged that alleged act was not lawful). Accordingly, the availability of state tort causes of action satisfies the Due Process Clause. Id. Plaintiff's Due Process Claim pertaining to his damaged vehicle therefore fails as a matter of law.

## POINT V

### THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Even if the Court were to find that plaintiff had plausibly alleged any constitutional violation against any individual defendant, the claim must be dismissed because the individual defendants are entitled to qualified immunity. The "doctrine of qualified

immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known…or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted). "The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (citing Taravella v. Town of Wolcott, 599 F.3d 129, 133-34 (2d Cir. 2010)). The Supreme Court has "repeatedly… stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)); see Saucier v. Katz, 533 U.S. 194, 200 (2001). This is because the doctrine of qualified immunity "protect[s] the defendant public official not just from liability but also from suit, thereby sparing him the necessity of defending by submitting to discovery on the merits." Amore v. Novarro, 624 F.3d 522, 529 (2d Cir. 2010).

Additionally, "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendants' shoes would have understood that he was violating it." Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018); see White v. Pauly, 137 S. Ct. 548, 552 (2017) (reiterating "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality'"); D.C. v. Wesby, 138 S. Ct. 577, 589 (holding that "[c]learly established means that, at the time of

the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." (internal quotation marks omitted)).

A.      <u>The NYPD Defendants are Entitled to Qualified Immunity.</u>

Here, the NYPD defendants' decision to stop, arrest, and search plaintiff and his vehicle was objectively reasonable and did not violate any clearly established law. Plaintiff was observed violating multiple traffic laws. Plaintiff's own criminal defense attorney admitted that plaintiff was not properly displaying a valid license plate and that he was using strobe lights. Moreover, it is undisputed that plaintiff's license was suspended. Thus, it was objectively reasonable for the NYPD defendants to stop and arrest plaintiff. Moreover, after a gun was found attached to plaintiff's vehicle, it was objectively reasonable for the NYPD defendants to place plaintiff under arrest for criminal possession of a weapon. Even assuming that plaintiff had sufficiently pleaded a constitutional violation by these defendants, the right to be free from such conduct is not clearly established. Accordingly, Officers Kempinski, Li, and Doyle are entitled to qualified immunity.

B.      <u>The DOC Defendants are Entitled to Qualified Immunity.</u>

The DOC defendants are likewise entitled to qualified immunity, as each of their alleged conduct was objectively reasonable and did not violate any established law. With regard to Capt. Firsov, plaintiff has failed to allege any facts to suggest that her alleged decision to refer plaintiff to medical staff in response to his request for vegan meals was objectively unreasonable. Moreover, the law is not clearly established that such conduct would violate the Constitution. As to plaintiff's claims regarding the alleged strip search and drug test, he has also failed to allege any facts to suggest that any DOC employee's actions were objectively unreasonable, nor is the law clearly established that such conduct as alleged is unconstitutional. The same logic applies

to plaintiff's deliberate indifference claim.  Accordingly, plaintiff's DOC claims must be dismissed as against individual DOC employees.

## POINT VI

### PLAINTIFF'S MUNICIPAL LIABILITY CLAIM FAILS AS A MATTER OF LAW

Any claims against the City must be dismissed because plaintiff has failed to allege the existence of any underlying policy or custom or to establish a violation of his constitutional rights.  In order to hold a municipality liable as a "person" within the meaning of 42 U.S.C. § 1983, a plaintiff must establish that the municipality itself was somehow at fault. See Monell v. Dep't of Social Services, 436 U.S. 658, 690-91 (1978) (liability exists only where "action pursuant to official municipal policy of some nature caused a constitutional tort").  "To bring a municipal liability claim, first, the plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused him injuries…Second, the plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights."  Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted).  This causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." Mercado v. City of New York, 08 Civ. 2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011).

Furthermore, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the government.  See City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  Connick v. Thompson, 563 U.S. 51, 61

(2011).  "[I]solated acts" by non-policymaking municipal employees are not sufficient to demonstrate a municipal custom or policy.  Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) (holding that "two instances, or at the most three, over a period of several years" is insufficient); See Green v. City of New York, 465 F.3d 65, 81 (2d Cir. 2006) (holding that one instance of a violation is insufficient to constitute a practice).

Here, plaintiff has failed to allege *any* municipal custom or policy.  At best, his allegations concern single instances of unconstitutional conduct by City employees, which cannot support a Monell claim against the City.

Thus, plaintiff has failed to allege any tending to support, at least circumstantially, the inference of a policy or how that policy caused plaintiff to suffer the deprivation of a constitutional right. Here, plaintiff's municipal liability claim is based on nothing more than unsupported supposition and must be dismissed.

Finally, plaintiff's Monell claim also fails because, as discussed *supra*, he has failed to establish a violation of his constitutional rights.  Where a plaintiff fails to establish such a violation, there can be no basis for a claim of municipal liability.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (if plaintiff cannot show that the constitutional rights were violated by a City actor, then there cannot be Monell liability); see also Martinez v. City of New York, No. 06 Civ. 5671 (WHP), 2008 U.S. Dist. LEXIS 49203, at *12 (S.D.N.Y. June 27, 2008) (noting that "[a] municipality cannot be liable for acts by its employees which are not constitutional violations.")  Accordingly, plaintiff's Monell claim against the City must be dismissed.

# POINT VII

## PLAINTIFF'S STATE LAW CLAIMS ARE TIME-BARRED

The Amended Complaint makes no mention of any state law claims and should not be read as an attempt to assert such claims. However, to the extent the Amended Complaint is read to assert state law claims, the claims must be dismissed as time-barred. Additionally, because plaintiff has failed to plead any viable federal claims, the Court should decline to retain jurisdiction over any remaining state law claims.

A.     Plaintiff's State Law Claims are Time-Barred.

The Court should dismiss all state law claims because plaintiff failed to serve a timely notice of claim on the City as required by General Municipal Law ("GML") § 50-k(6), nor has he pled that he has done so. Under New York law, in an action against the City of New York or one of its employees "founded upon tort," a notice of claim must be served on the City within 90 days after the claim arises. The service of this notice of claim is a condition precedent to suing under GML §§ 50-e(1)(a) and 50-i(i). Under GML § 50-k(6), it is required even in suits only against individual employees. Where claims are alleged against an individual municipal employee, a claimant must still serve a notice of claim on the City, where the City is the real party in interest and may have a statutory obligation to indemnify the employee. See GML § 50-e(1)(b); Fitzgerald v. Lyons, 39 A.D.2d 473 (4th Dep't 1972). Indeed, GML § 50-k(6) provides that no action shall be maintained or prosecuted against the City or an employee unless a notice of claim is served upon the City and in compliance with GML § 50-(e). Plaintiff failed to serve a notice of claim on the City regarding any of the claims alleged in the Amended Complaint, and thus is barred from pursuing any related state law claims.

Here, it is clear that plaintiff's allegations concern actions likely taken by City employees during the scope of their employment. Further, the Office of the Corporation Counsel has assumed representation of Officer Kempinski, Officer Li, and Capt. Firsov, which demonstrates that the City has determined that they were acting in the scope of their employment, in furtherance of their duties, consistently with agency rules and regulations, and are eligible for representation under the GML. See GML § 50-k(2)&(3); see also Williams v. New York, 64 N.Y.2d 800, 802 (1985). Thus, the City is the real party in interest, and plaintiff's failure to serve a timely notice of claim on the City in compliance with GML § 50-k(6) is fatal to any state law claims. See Wagman v. Hooper, 138 A.D.3d 826 (2d Dep't 2016); Thygsen v. North Bailey Volunteer Fire Co. Inc., 106 A.D.3d 1458 (4th Dep't 2013). The last date plaintiff alleges any misconduct to have occurred was February 26, 2018. Thus, any state law claims would have accrued on or before that date. Thus, any notice of claim should have been served, on or before May 27, 2018. Because the plaintiff has failed to serve any notice of claim, any state law claims are time-barred.

B.      The Court Should Decline to Exercise Supplemental Jurisdiction Over Any Surviving State Law Claims.

Should the Court find that any of the plaintiff's state law claims are neither time-barred nor subject to dismissal, the Court should decline to exercise supplemental jurisdiction because plaintiff has no viable federal claims. Where a federal district court "dismisse[s] all claims over which it has original jurisdiction," the Court must balance the factors of "judicial economy, convenience, fairness, and comity[,]" in exercising its discretion to retain or decline jurisdiction. Keith v. City of New York, No. 11 Civ. 3577 (KPF), 2014 U.S. Dist. LEXIS 166469, at *68 (S.D.N.Y. Dec. 1, 2014). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors…will point toward declining to exercise

jurisdiction over the remaining state-law claims." Id. (citing Pension Benefit Guar. Corp. ex rel.

St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 727

(2d Cir. 2013)). Because plaintiff's federal claims must be dismissed, the Court should decline

to retain jurisdiction over any remaining state law claims.

**<u>CONCLUSION</u>**

For the foregoing reasons, defendants respectfully request that the Court grant

their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), together with such costs, fees, and

other and further relief as the Court deems just and proper.

Dated:      New York, New York
            July 26, 2019

ZACHARY W. CARTER
Corporation Counsel of the City of New York
*Attorney for Defendants City, Kempinski, Li,*
*and Firsov*
100 Church Street
New York, New York 10007
(212) 356-2322

By:    /s/ _____
        Zachary Kalmbach
        *Assistant Corporation Counsel*
        Special Federal Litigation Division

cc:    <u>Via Regular Mail</u>
      Noel Brown
      *Plaintiff* pro se
      S.C.I. Somerset
      1600 Walters Mill Rd.
      Somerset, Pennsylvania 15510