UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOEL BROWN,

                        Plaintiff,

-v-

CITY OF NEW YORK et al.,

                       Defendants.

18-CV-3287 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Noel Brown, proceeding *pro se*, brings this action for various claims arising out of his arrest and confinement. Brown has sued three police officers involved in his arrest, three correction officers involved in his confinement, and the City of New York. For the reasons that follow, the complaint is dismissed for failure to state a claim upon which relief can be granted. Brown is granted permission to amend his complaint, however, in order to correct the deficiencies identified in this Opinion and Order.

**I.    Background**

The following facts are taken from the operative complaint (Dkt. No. 6 ("Compl.")) and are assumed true for purposes of this motion to dismiss.

On September 6, 2015, Plaintiff Noel Brown was arrested by New York Police Officers Anthony Kempinski, Kim Li, and William Doyle. (*See* Compl. at 8.) The officers searched Brown's vehicle without a search warrant and without Brown's permission. (Compl. at 10.) An inventory search of the vehicle revealed a loaded firearm. (Dkt. No. 43-2 at 4.)[1] Following

---

[1] On a motion to dismiss, "consideration is limited to the factual allegations in plaintiff's . . . complaint . . . [and] to matters of which judicial notice may be taken," *Brass v. Am. Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993), which include matters of "public record," *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000). Here, the Court finds it proper to take judicial notice of the records of Brown's arrest, indictment, mistrial, and ultimate conviction.

Brown's arrest, Officer Kempinski "took posses[s]ion of [Brown's] keys" and "without permi[ss]ion . . . [took] a joy ride that resulted in an accident[] and damage[] to [Brown's] property." (Compl. at 8.)

A grand jury subsequently indicted Brown on two counts of criminal possession of a weapon in the second degree, *see* N.Y. Penal Law § 265.03(1)(b), (3), and one count of aggravated unlicensed operation of a motor vehicle in the third degree, *see* N.Y. Veh. & Traf. § 511(1). (*See* Compl. at 8; *see also* Dkt. No. 43-6.) Brown's first trial ended in a mistrial on the weapons offenses and an acquittal on the vehicle offense. (*See* Dkt. No. 43-7.) Brown's second trial ended in a conviction for the weapons offenses. (*See* Dkt. No. 43-8.)

In the meantime, Brown was detained at the Manhattan Detention Complex ("MDC"). (Compl. at 11.) Upon arrival in 2017, Brown informed the facility staff that he was a "[l]ife long [v]egan for [r]eligious [m]eals." (Compl. at 12.) Brown did not receive a vegan meal, however, for more than two months. (*See id.*) After receiving that meal, Brown was informed by MDC Captain Firsov that he would not receive another vegan meal "until [he] . . . went to [m]edical sick call." (*Id.*)

On January 17, 2018, Brown was subjected to a strip search in the presence of female officers and in front of cameras. (*Id.*)

On February 14, 2018, Correction Officer Covinton forced Brown to submit to a drug test, threatening Brown with physical force if he refused to comply. (*Id.*)

Finally, on February 26, 2018, Brown was taken to a facility on Rikers Island from 5:00 a.m. to 11:00 p.m. Brown was not provided a meal or his daily medication, causing him to pass

---

(Dkt. Nos. 43-2, 43-6, 43-7, 43-8.) For this same reason, Brown's motion to strike Defendants' reference to his criminal conviction is denied. (Dkt. No. 58.)

out. (Compl. at 13.) Brown was told by Correction Officer Dail to "report [any complaints] to 311" but that Dail "d[id] not care." (*Id.*)

Proceeding *pro se*, Brown brings claims under 42 U.S.C. § 1983 against the City of New York, Police Officers Kempinski, Li, and Doyle, Correction Officers Covinton and Dail, and MDC Captain Firsov.[2] Brown seeks compensatory and punitive damages, as well as costs and interest.

## II.     Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the well-pleaded factual allegations of the complaint, presumed true, permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"[W]hen [a] plaintiff proceeds *pro se*, as in this case, a court is obliged to construe h[er] pleadings liberally, particularly when [she] allege[s] civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). But "even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

---

[2] In a prior decision, this Court dismissed Brown's claims against Assistant District Attorney Rebecca Dunnan, attorney Afsi Khot, the Legal Aid Society, the New York Department of Motor Vehicles, and various agencies of the City of New York. (*See* Dkt. No. 5.) In another prior decision, this Court dismissed Brown's claims against Correction Officers Vuu and Simon and Police Officer Grissel Lachman. (*See* Dkt. No. 8.)

3

### III. Discussion

Brown brings various claims relating to both his arrest and his confinement.[3] Each set of claims is discussed in turn.

#### A. Federal Claims Relating to Arrest

##### 1. False Arrest

Brown first asserts that his arrest violated his Fourth Amendment rights and constituted "false arrest." (Compl. at 10.) To make out a claim of false arrest under the Fourth Amendment, Brown must show that the arrest was made "without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Accordingly, his false-arrest claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed." *Id.* at 487. Specifically, where "the *only* evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence." *Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir. 1999); *see also Toliver v. City of New York*, Nos. 10-CV-3165 & 10-CV-6619, 2011 WL 4964665, at *5 (S.D.N.Y. Oct. 18, 2011) ("As with a false arrest claim, claims for unlawful search and seizure [are] barred by *Heck* . . . [i]f the plaintiff was convicted based on the property unlawfully seized . . . and that conviction remains valid . . . ."). Here, Brown's assertion that the original arrest was made without probable cause necessarily implicates *Heck*'s bar, as his subsequent conviction for possession of a weapon depended on the fruits of the initial arrest. *See*

---

[3] This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 and jurisdiction over the state-law claims under 28 U.S.C. § 1367.

*Black v. Blackmun*, No. 11-CV-2372, 2011 WL 6019394, at *2 (E.D.N.Y. Dec. 1, 2011) ("Because [Plaintiff's] conviction hinged directly on the weapons procured during this allegedly unlawful search, an award of damages would necessarily imply the invalidity of his state court conviction."). Accordingly, Brown's false arrest claim is dismissed.

### 2. Racial Discrimination

Brown separately asserts that his arrest was an act of "racial profilin[g]," which can be construed to raise a § 1983 claim under the Equal Protection Clause. (Compl. at 10.) This claim fails, however, because Brown has not alleged any facts indicating either that he was "selectively treated" as "compared with others similarly situated" or that "such selective treatment was based on impermissible considerations." *LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609 (2d Cir. 1980)). A "naked allegation" of discrimination does not suffice; rather, Brown must allege specific facts indicating both (1) that he was treated differently than other similarly situated parties and (2) that the police officers involved treated him differently because of racial bias. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994). Brown's racial discrimination claim is therefore dismissed.

### 3. Deprivation of Property

Finally, the complaint seeks recovery for the "[p]roperty damage[]" to Brown's vehicle, which can be construed to raise a § 1983 deprivation of property claim under the Due Process Clause. (Compl. at 10.) This due process claim fails because the alleged deprivation of property was the result of a "random and unauthorized act" and state tort law provides an adequate postdeprivation remedy. *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990); *see Alloul v. City of New York*, No. 09-CV-7726, 2010 WL 5297215, at *6 (S.D.N.Y. Dec. 21, 2010) ("[J]udges in this district have consistently found that the availability of state tort law causes of action

constitutes an adequate post-deprivation state remedy.").[4]  Accordingly, Brown's due process claim is dismissed.

### B. Federal Claims Relating to Confinement

#### 1. Denial of Vegan Meals

Brown first brings a claim for "[v]iolation of [his] [r]elig[i]ous [r]ights" stemming from the denial of vegan meals (Compl. at 12), which this Court construes as a § 1983 free exercise claim under the First Amendment.  For such claims, the Second Circuit has articulated a three-part standard: "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective." *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988).  Additionally, the Second Circuit has sometimes assumed, without deciding, that a challenger must also establish at the threshold that the challenged conduct "substantially burdens" her sincerely held religious beliefs.  *Holland v. Goord*, 758 F.3d 215, 220–21 (2d Cir. 2014); *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006).[5]

Brown's complaint is sparse.  But liberally construed, it makes the requisite showing under the Second Circuit's three-part standard.  Brown pleads that he "is a [l]ife long [v]egan for

---

[4] In his opposition papers, Brown notes that his state-law remedies are now time barred. (Dkt. No. 59 at 12.)  But "the fact that the plaintiff did not avail himself of the [state] procedure [does] not affect the adequacy of the state remedy." *Jenkins v. McMickens*, 618 F. Supp. 1472, 1474 (S.D.N.Y. 1985).

[5] At other times, the Second Circuit has indicated that a "lower threshold" showing would suffice.  *McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004); *see also Holland*, 758 F.3d at 221.  The Court nonetheless applies the "substantial burden" test because it finds that it has been satisfied.  *Woodward v. Perez*, No. 12-CV-8671, 2014 WL 4276416, at *3 (S.D.N.Y. Aug. 29, 2014) ("[T]he Court will analyze the free exercise claim under th[e] [substantial burden] standard because it finds that [the plaintiff] has satisfied this threshold step.").

[r]eligious [m]eals." (Compl. at 12.) This allegation makes it clear that Brown's commitment to veganism is religious in nature. And Defendants do not question Brown's sincerity. (Dkt. No. 44 at 12–13; Dkt. No 60 at 6.) Nor do they contest that the denial of vegan meals infringes upon Brown's religious commitment to veganism. (*Id.*) Nor do they make any argument that the denial of vegan meals furthers a penological objective. (*Id.*) Accordingly, Brown has pleaded a *prima facie* violation of his free exercise of religion.

Brown has also pleaded a "substantial burden" on his religious belief. According to the complaint, Brown has repeatedly been denied vegan food satisfying the requirements of his religion, and as a result he has been "force[d] to buy exces[s]ive amo[u]nt[s] [of food from the] comm[issar]y in order to not starve." (Compl. at 12.) These allegations establish the existence of a substantial burden. "[C]ourts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith . . . [substantially] burden[s] their free exercise rights." *McEachin v. McGuinnis*, 357 F.3d at 203; *see Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) ("[A] prisoner has a right to a diet consistent with his or her religious scruples . . . ."); *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) ("[A] substantial burden exists where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" (alteration in original) (quoting *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981))). That is all the more true given Brown's *pro se* status, which requires that his pleadings be "read liberally [and] interpreted to 'raise the strongest arguments that they suggest.'" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Defendants disagree. Citing *Johnson v. Paul*, No. 17-CV-3654, 2018 WL 2305657 (S.D.N.Y. May 21, 2018), Defendants argue that the substantial-burden analysis turns in part on

7

whether "participation in the [religious activity], in particular, is considered central or important to [the plaintiff's religious] practice." (Dkt. No. 44 at 12 (alterations in original) (quoting *Johnson v. Paul*, 2018 WL 2305657, at *5).) Because Brown has provided "no details whatsoever about the missed meals," Defendants assert, the Court cannot conclude that the meals were "important" to Brown's religion. (Dkt. No. 60 at 6 (quoting *Johnson*, 2018 WL 2305657, at *6).) But *Johnson* involved a Jewish plaintiff whose failure to allege any details about missed meals prevented the Court from "reasonably infer[ring]" whether the plaintiff was "forced to choose between starving or observing Passover." 2018 WL 2305657, at *6. Here, by contrast, Brown has alleged a crucial detail about the prison-provided meals — that they are nonvegan — giving rise to the inference that Brown was put to the precise choice between his religion or starvation. *Johnson*, then, is inapposite.[6]

Brown's complaint, however, suffers from a different flaw: it fails to allege the personal involvement of any of Defendants. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Here, the complaint alleges only that Captain Firsov informed Brown that he would not receive a vegan meal until he obtained medical clearance. (Compl. at 12.) There is no indication

---

[6] Separately, Defendants claim qualified immunity. Second Circuit precedent "clearly establishe[s] that a prisoner has a right to a diet consistent with his or her religious scruples . . . absent a legitimate penological justification." *Ford*, 352 F.3d at 597. Here, the complaint asserts that Brown has been denied a diet consistent with his religion, and Defendants have not asserted a legitimate penological justification. (*See* Dkt. No. 44 at 12–13; Dkt. No 60 at 6.) Accordingly, the defense is not available at this stage of litigation. *See McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (noting that on a motion to dismiss, "the facts supporting the [qualified immunity] defense [must] appear on the face of the complaint").

8

that Captain Firsov, or any other Defendant, had any involvement in any decision to deny Brown a vegan meal. Absent such an allegation, the claim is dismissed.

### 2. Strip Search

Brown brings claims arising out of a strip search he was forced to endure in front of cameras and female correction officers. (Compl. at 12.) The Court construes the complaint to bring a § 1983 claim under the Fourth Amendment. This claim fails. Under controlling Second Circuit precedent, "[r]outine random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment." *Castro-Sanchez v. N.Y. State Dep't of Corr. Servs.*, No. 10-CV-8314, 2011 WL 6057837, at *8 (S.D.N.Y. Dec. 6, 2011). That is true even if the strip search occurs "in front of cameras." *See Perkins v. City of New York*, No. 14-CV-3779, 2017 WL 1025987, at *3 (S.D.N.Y. Mar. 15, 2017).[7]

As for the presence of female officers, "generally, the strip search of a male inmate in view of a female correction officer does not, by itself, rise to the level of a constitutional violation." *Holland v. City of New York*, 197 F. Supp. 3d 529, 543 (S.D.N.Y. 2016). The case law suggests, however, that although "occasional, indirect, or brief viewing of a naked prisoner by a guard of the opposite sex may be permissible, . . . 'regular and close viewing' is prohibited." *Correction Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, No. 04-CV-2199, 2011 WL

---

[7] *See also Walter v. Ponte*, No. 14-CV-8507, 2016 WL 4411415, at *4 (S.D.N.Y. Aug. 18, 2016) ("That the strip searches were carried out in front of cameras and other inmates does not counter [the prison's] legitimate security interest."); *Smith v. City of New York*, No. 14-CV-5934, 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) ("[T]he presence of cameras . . . [does not] make[] an otherwise constitutional strip search unconstitutional."); *Peek v. City of New York*, No. 13-CV-4488, 2014 WL 4160229, at *2 (S.D.N.Y. Aug. 18, 2014) ("Without more . . . the presence of a camera at a strip search does not amount to a constitutional violation.").

In his opposition papers, Brown argues that the presence of a camera at a strip search is illegal under Federal Rule of Civil Procedure 5.2 and Federal Rule of Criminal Procedure 49.1. (Dkt. No. 59 at 11.) Neither rule, however, governs the use of cameras at strip searches in prisons under the Fourth Amendment.

1236135, at *11 (S.D.N.Y. Mar. 30, 2011) (footnotes omitted).  Here, Brown has not alleged "that the search involved close viewing of his body, that he was subject to repeated opposite-sex viewings, or that the [female officer] touched [him] during the search." *Little v. City of New York*, No. 13-CV-3813, 2014 WL 4783006, at *3 (S.D.N.Y. Sept. 25, 2014).  Absent any such allegation, the Court cannot find that the presence of female officers rendered the strip search unconstitutional.

Separately, courts in this circuit have found that "the humiliation caused by strip searches may be sufficient to make out a claim when conducted intentionally to harass or embarrass the plaintiff." *Walker*, 2016 WL 4411415, at *5; *see also Perkins*, 2017 WL 1025987, at *2 ("[W]hile humiliation caused by strip searches may be sufficient to make a claim, the search must be 'conducted intentionally to harass or embarrass the plaintiff.'" (quoting *Walker*, 2016 WL 4411415, at *5)).  Here, however, Brown has not alleged any facts suggesting that the strip search was conducted with the specific intent to humiliate, harass, or abuse him.  Absent any allegations suggesting an improper motive, Brown has failed to establish that the strip search violated the Fourth Amendment.

Brown's claim independently fails because he has failed to plead the personal involvement of any of the named Defendants.  "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon*, 58 F.3d at 873 (quoting *Wright*, 21 F.3d at 501).  Here, the complaint states only that unnamed correction officers subjected him to a strip search.  (Compl. at 12.)  Absent an allegation that one of the Defendants participated in the violation or was otherwise responsible for the strip search, the claim must be dismissed.

In sum, Brown's claims arising out of the strip search are dismissed for two reasons: (1) for failure to plead the personal involvement of any of the individual defendants and (2) for failure to plead facts suggesting either that the strip search was conducted with the purpose of harassment or that the strip search involved prolonged interaction with female correction officers.

### 3. Drug Test

Brown brings a claim against Officer Covinton, who forced him to submit to a drug test. (Compl. at 12.) The Court construes this as a § 1983 claim under the Fourth Amendment, as a drug test constitutes a search within the meaning of the Fourth Amendment and must be conducted in a reasonable manner. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995). Here, however, Brown has entirely failed to plead the circumstances surrounding the drug test. Despite the obligation to construe *pro se* pleadings liberally, the Court "cannot invent factual allegations that [a *pro se*] plaintiff has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Accordingly, the claim is dismissed.

### 4. Denial of Food and Medication

Brown brings a claim arising out of the denial of food and medication during an eighteen-hour stay on Rikers Island. (*See* Compl. at 13.) The Court construes this as a § 1983 claim of deliberate indifference to medical needs under the Eighth Amendment. A claim of deliberate indifference comprises "both an objective and subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). First, as an objective matter, the inmate's medical condition must be "sufficiently serious," which means that it must be "a condition of urgency . . . that may produce death, degeneration, or extreme pain." *Hathaway*, 37 F.3d at 66 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, as a subjective matter, the charged official must "know[] of and disregard[] an excessive risk to inmate health or safety" — in other words,

"the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Brown's claim suffers from a series of defects. First, Brown fails to allege the personal involvement of any of the Defendants. Again, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon*, 58 F.3d at 873 (quoting *Wright*, 21 F.3d at 501). Here, Brown alleges only that Officer Dail instructed him to call 311 after Brown was denied food and medication. (Compl. at 13.) Without an allegation that Officer Dail, or one of the other Defendants, was somehow responsible for the denial of medical treatment, Brown's claim must be dismissed.

Second, Brown fails to meet the objective prong of the deliberate indifference standard — *i.e.*, the requirement that he suffer from a "serious medical condition." The allegations in the complaint do not suffice; there, Brown alleges only that he takes medication for an unnamed condition. (Compl. at 13.) In his opposition papers, Brown alleges that he suffers from asthma and from unnamed allergies. (Dkt. No. 59 at 11.) That, too, does not suffice. "Being an asthmatic . . . is not a condition . . . that is severe or 'sufficiently serious[,]' . . . [as] distinct from the situation in which an inmate is suffering an actual attack." *Patterson v. Lilley*, No. 02-CV-6056, 2003 WL 21507345, at *4 (S.D.N.Y. 2003). Rather, Brown must allege that he was denied treatment for an actual asthma attack or another condition carrying the risk of death, degeneration, or extreme pain. Without such an allegation, Brown's claim for deliberate indifference fails.

Third, Brown fails to meet the subjective prong of the deliberate indifference standard — *i.e.*, the requirement that the officer "knew of and deliberately disregarded" Brown's medical

condition. To state a claim under the Eighth Amendment, Brown must plead that Officer Dail (or another Defendant) was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that he in fact "dr[e]w the inference." *Farmer*, 511 U.S. at 837. Absent such allegations, the claim is dismissed.

In sum, Brown's claims arising out of the denial of food and medication are dismissed for three reasons: (1) for failure to plead the personal involvement of any of the individual defendants, (2) for failure to plead that he was denied treatment for a serious medical condition (such as an actual asthma attack), and (3) for failure to plead that any of the individual defendants had actual knowledge of his serious medical condition.

### C. Claims against the City of New York

To the extent that the complaint can be construed to raise claims against the City of New York, they are dismissed. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), constitutional tort claims against a municipality lie only if the complained-of injury was inflicted pursuant to "policy or custom, whether made by [the municipality's] lawmakers or by those whose edicts or acts may fairly be said to represent official policy," *id.* at 694. Thus, to survive a motion to dismiss, a plaintiff bringing claims against a municipality must plead "facts suggesting the policy [or custom's] existence." *Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order).

Here, Brown's complaint asserts that New York City, by "maintain[ing] a police department," has "assume[d] the risks incidental to the maintenance of a police force and the employment of police officers." (Compl. at 13.) This statement is incorrect as a matter of law. *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). And the complaint pleads no facts suggesting the existence of

any City policy or custom that caused any of Brown's complained-of injuries. Accordingly, the claims against the City are dismissed.

### D. State Claims

To the extent that Brown's complaint can be construed to raise state-law claims, they are dismissed for failure to comply with New York's notice-of-claim requirement. Under New York law, a plaintiff asserting tort claims against the City or its employees must file a notice of claim within ninety days after the incident giving rise to the claim and commence the action within a year and ninety days from the date of the incident. *See* N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1). A plaintiff's "failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of h[er] claims." *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003).

Here, Brown does not dispute that he failed to file a notice for any claims arising out of his confinement; any such claims must therefore be dismissed. *See id.* Brown does assert, however, that he complied with the notice-of-claim requirement for his false arrest and deprivation of property claims, both of which arose out of his arrest. (*See* Dkt. No. 59 at 13, 95–99.) But the purported notices of claims provided by Brown in his opposition papers are dated May 18, 2018, and May 22, 2018. (Dkt. No. 59 at 95, 98.) Neither notice was filed within the required ninety days following Brown's arrest on September 6, 2015. (Compl. at 8.) Accordingly, all of Brown's state-law claims are dismissed.[8]

---

[8] Further, Brown did not file this lawsuit within a year and ninety days of his arrest. Thus, the claims arising out of his arrest must also be dismissed as time barred. *See, e.g.*, *Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 249 (S.D.N.Y. 2012).

### E. Leave to Amend the Complaint

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). "[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). But leave should be denied if repleading would be "futile." *Id.*

Brown is granted leave to amend his complaint with respect to the federal claims relating to his confinement, including the denial of vegan meals, the strip search, the drug test, and the denial of food and medication. He is also granted leave to amend for the equal protection claim arising from his arrest. But leave to amend is denied with respect to all other federal claims relating to his arrest, all claims against the City of New York, and all state-law claims, as amendment would be futile.

Brown is directed to file an amended complaint within sixty days of the date of this Opinion and Order that addresses the deficiencies identified above. The new amended complaint will replace, not supplement, the complaint currently before the Court. It therefore must contain all of the claims and factual allegations Brown wishes the Court to consider, including the specific actions or omissions of each Defendant that violated Brown's constitutional rights. If Brown fails to abide by the sixty-day deadline, this action will be dismissed with prejudice.

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's motion to strike is DENIED.

Plaintiff is granted leave to amend, provided that he does so within sixty days of the date of this Opinion and Order. If no amended complaint is filed by that date, this action will be dismissed with prejudice.

The Clerk of Court is directed to close the motions at Docket Numbers 42 and 58.

Counsel for Defendants are directed to mail a copy of this Opinion and Order to Plaintiff within seven days.

SO ORDERED.

Dated: April 9, 2020
New York, New York

_____
J. PAUL OETKEN
United States District Judge